Adam B. Wolf (Cal Bar No. 215914)
PEIFFER WOLF CARR KANE & CONWAY,
A Professional Law Corporation
4 Embarcadero Center, Suite 1400
San Francisco, CA  94111
Telephone: 415.766.3545
Facsimile: 415.402.0058
Email: awolf@peifferwolf.com

Ashlie Case Sletvold (*pro hac vice to be filed*)
PEIFFER WOLF CARR KANE & CONWAY,
A Professional Law Corporation
1422 Euclid Avenue, Suite 1610
Cleveland, OH  44115
Telephone: 216.260.0808
Facsimile: 504.608.1465
Email: asletvold@peifferwolf.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE RICHARDSON RICHARDS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL S. KIKEN, M.D.,<br><br>Defendant. | Case No.<br><br><br>**COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     Defendant Dr. Michael S. Kiken inserted his own sperm into his patient, Plaintiff Katherine Richardson Richards. He did so without her consent and against her wishes. Some people call this "medical rape." But regardless of the name, this heinous act is unethical, unacceptable, and illegal.

2.     Dr. Kiken violated Plaintiff in this manner *repeatedly*. To compound the horror, Plaintiff is not Dr. Kiken's only victim.

3.     In 1978, Plaintiff and her husband turned to Defendant for fertility treatment. Without Plaintiff's knowledge or consent, Defendant used his own sperm to impregnate her, rather than, as promised, sperm from an anonymous donor. Plaintiff learned of his betrayal only recently, after her daughter obtained her 23andMe DNA profile. Plaintiff's daughter and son are both the result of Defendant's medical rape of Plaintiff, and her daughter is a carrier for a serious genetic condition—Tay Sachs—because Defendant used his own sperm. Plaintiff is shocked and devastated by Defendant's disgusting abuse of his power to violate her trust.

**PARTIES**

4.     Plaintiff Katherine Richardson Richards is a resident of Livermore, California.

5.     Defendant Michael S. Kiken is a resident of Virginia. He was licensed to practice medicine in California beginning October 6, 1972 (License No. G 23484). The Medical Board of California lists his license as "cancelled." Since February 3, 1998, he has been licensed to practice in Virginia (License Number 0101057217).

**JURISDICTION & VENUE**

6.     Jurisdiction is asserted under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     The Court has personal jurisdiction over Defendant and venue is proper here under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claim took place in this judicial district.

/ / /

/ / /

**FACTUAL BACKGROUND**

8.      In 1978, Plaintiff and her husband were newlyweds and wanted to be parents. Unable to conceive on their own, they turned to Defendant for help.

9.      Plaintiff and her husband saw Defendant at his office in Alamo, California (Contra Costa County).

10.     Plaintiff and her husband submitted to physical examinations and testing, and they consulted with Defendant regarding the results and his recommendations for treatment. Defendant advised the couple that their difficulty conceiving was a result of male-factor infertility.

11.     After discussing their options with Defendant, Plaintiff and her husband followed Defendant's advice: Plaintiff would undergo artificial insemination using sperm from an anonymous donor.

12.     Artificial insemination involves a physician inserting sperm into a woman's uterus, through her vagina, to facilitate pregnancy.

13.     Defendant promised Plaintiff and her husband the following regarding the artificial insemination she underwent in 1979: (1) the sperm would come from a sperm bank; (2) the sperm would be from an anonymous donor who would never know Plaintiff's identity; (3) the donor would be a medical student or medical intern (which they understood to mean he would be in the age range of approximately 22–28); (4) the donor would physically resemble Plaintiff's husband; (5) the donor would share a similar ethnic background as Plaintiff's husband; (6) the donor would be in excellent health; (7) the sperm specimen would be medically screened and cleared; (8) the donor would have above-average intelligence; (9) the donor would have musical ability as Plaintiff's husband did; and (10) the donor would share their Christian faith. Plaintiff consented to be artificially inseminated with anonymous donor sperm that met those conditions.

14.     Plaintiff's husband died in 2000. He was 5'11" with hazel eyes. His family background was Norwegian, Irish, and English. They were Christians. He had an athletic build and a pinkish skin tone. He was musically gifted. By contrast: Defendant was much shorter than Plaintiff's husband, slender, with brown eyes, and an olive complexion. Defendant's family is Jewish, and

1   he did not share the same geographic ancestral ties as Plaintiff's husband. Defendant was in his

2   late 30s, rather than the 22–28 age range of a typical medical student or intern.

3   15.      Rather than honor Plaintiff's wishes and follow her instructions, Defendant—without

4   Plaintiff's knowledge or consent—used his own sperm to impregnate her. As a result, she became

5   pregnant in 1979 and gave birth to a daughter in January 1980.

6   16.      Plaintiff became pregnant on her second round of artificial insemination in 1979. On

7   information and belief, Defendant used his own sperm to attempt to impregnate Plaintiff for both

8   of those rounds.

9   17.      Defendant instructed Plaintiff and her husband that their use of donor sperm must be kept

10   strictly confidential and that they should never tell anyone. Defendant cautioned Plaintiff and her

11   husband that the only reason to reveal their use of a sperm donor was in the case of a severe

12   medical emergency. He assured them that if their child were in danger, the donor's medical

13   information would be provided by the sperm bank by referencing the donor "number."

14   18.      Plaintiff and her husband later returned to Defendant to conceive their second child,

15   asking for the same anonymous donor. Defendant responded that it was no problem because he

16   had retained the "number" for the donor they had used to conceive their daughter. Their son was

17   conceived in 1981 from what Defendant led Plaintiff and her husband to believe was the same

18   anonymous, healthy, young medical student or intern as before. Plaintiff's son was born in 1981.

19   19.      When Plaintiff and her husband returned to Defendant in 1981 for further treatment,

20   Defendant intentionally concealed the truth about his prior use of his own sperm to impregnate

21   her. He continued to lie to Plaintiff about what he had done and would do to her again. By

22   referring to a donor "number" from a sperm bank—when Defendant knew he had used and

23   intended to again use his own sperm to impregnate Plaintiff rather than using sperm from a sperm

24   bank—Defendant intentionally misled Plaintiff and concealed his earlier misconduct. That

25   scheme to fraudulently conceal his violation of Plaintiff's trust continues to this day.

26   20.      Defendant had no right to insert his own sperm into Plaintiff without her consent.

27

28

21.     Until recently, Plaintiff believed that Defendant had followed her instructions and used donor sperm that met the express characteristics as he had promised.

22.     Last year, Plaintiff's daughter received a 23andMe DNA kit as a gift. Her results showed she had a half-brother (in addition to her full-brother, Plaintiff's son) and that Plaintiff's daughter was 50% Irish and French and 50% Ashkenazi Jewish. It also showed she is a carrier for Tay Sachs, a rare and serious genetic condition often transmitted through people of Jewish heritage. Tay Sachs causes seizures, mental and sensory disabilities, and leads to early death in children born with the disease. This was shocking to Plaintiff because Defendant had represented that the sperm donor was Christian, in excellent health, and medically cleared. Plaintiff still did not yet know or suspect that Defendant had used his *own* sperm.

23.     During the same time frame that she received her 23andMe results (but before Plaintiff and her daughter had any reason to suspect that Defendant was the actual donor), Plaintiff's daughter was experiencing a serious health issue and exploring treatment options for which her family medical history was relevant. She wanted to learn what she could about the anonymous donor to determine whether there was additional medical history that she should be aware of that would help inform her own medical decision-making.

24.     When Plaintiff and her husband were making the decision to use a sperm donor, Defendant had assured them that if their children ever needed medical information about the anonymous sperm donor, it would be provided. So again, Plaintiff turned to Defendant for assistance. Last September, Plaintiff sent Defendant a letter asking him for help in learning about the anonymous donor's medical history. Plaintiff still did not yet know or suspect that Defendant had used his *own* sperm. She was simply trying to learn more about the anonymous donor to obtain medical-history information for her daughter.

25.     Defendant ignored Plaintiff's request for help. He did not respond to the letter. Likewise, when Plaintiff followed up with a phone call to Defendant, she left a voicemail and Defendant did not call back.

26.     In the meantime, Plaintiff's son had his DNA tested, which showed he was a full sibling with his sister (meaning the same donor sperm was used to conceive them both).

27.     Plaintiff's daughter continued to investigate her genetic history using various online databases, eventually engaging the services of a genealogist. The results were astonishing, disgusting, and devastating. Through her daughter's research, Plaintiff learned the terrible truth that Defendant had medically raped her at least twice.

28.     Ancestry.com results show that Defendant Michael Kiken (born 1943) is Plaintiff's children's biological father and that his parents David Kiken (1916–2010) and Ethel Bell (1917–1962) are their biological grandparents. Plaintiff's children also have genetic relationships to Dr. Kiken's cousins: Gloria Beth Kiken Feiner, Claire Kiken Hammond, Lindsey Kiken, Mark Kiken, and Marty Vogel.

29.     The centimorgans (the units by which DNA is measured and passed on) shared by Plaintiff's children and Defendant's relatives matches what genealogists would expect a child of Defendant to share.

30.     The chances of Plaintiff's and Defendant's families intermarrying—thus creating these genetic similarities some other way—are vanishingly small. The Kiken family came from Austria in the early 1900s. Dr. Kiken's paternal grandparents (Charles Kiken and Gisella Hecht) were the first generation to relocate to the United States, where they met and married in New York. Dr. Kiken's maternal grandparents came from Poland around the same time and changed their name from Belchatofsky to Bell. His mother Ethel was their only child.

31.     Plaintiff's family, by contrast, have been living in the United States since the late 1600s on her father's side and the early 1700s on her mother's side. Their ancestry is English, French, and Irish.

32.     Plaintiff would never have agreed to allow Defendant to use his own sperm to impregnate her.

33.     Defendant abused his position of trust and authority to insert his own sperm into Plaintiff. He violated his oath as a physician to violate an unsuspecting patient.

34.     As a result of Defendant's repeated misconduct, Plaintiff has suffered severe and debilitating anxiety and emotional pain, in addition to physical symptoms, shattering her trust and her life.

35.     Plaintiff had no reason to suspect that Defendant had medically raped her before learning of her daughter's genetic relation to him through online databases and the conclusions of a genealogist.

36.     Defendant stood in a professional and commercial relationship with Plaintiff at the time of the wrongful act, and fraudulently and knowingly concealed from Plaintiff what he had done to her for the purpose of escaping responsibility for his misconduct. Because of his fraud, concealment, and failure to disclose the truth despite his duty to do so, Plaintiff did not know, nor in the exercise of reasonable care could she have been put on inquiry that Defendant used his own sperm to impregnate her twice without her consent. Her cause of action thus did not accrue until she learned the facts of Defendant's misconduct through her daughter's investigation into the sperm donor's identity.

37.     Plaintiff is not the only woman against whom Defendant has committed this heinous act. Plaintiff's children have a half-brother whose mother also saw Defendant for fertility treatment around the same time as Plaintiff. The half-brother is four-months older than Plaintiff's daughter. They grew up 15 minutes from each other, were in the same grade, and shared similar friend circles. Defendant gave the half-brother's mother the exact same spiel about using donor sperm from a medical student or medical intern and assuring her that the donor was in excellent health and medically cleared. He lied to her just like he lied to Plaintiff.

38.     Defendant had a duty to disclose facts to Plaintiff based on the doctor-patient relationship. His refusal to fulfill that duty began 40 years ago and continued through his refusal to disclose his misconduct when Plaintiff sought health information about the anonymous donor late last year and early this year. His refusal to acknowledge paternity of Plaintiff's children constitutes a continuing fraud.

39.     Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless disregard of Plaintiff's rights. Using the same sperm to inseminate women living in a small geographic area—where their children may interact without knowing their genetic relation to one another—is dangerous and demonstrates Defendant's reckless disregard for the rights of his patients, their children, and the community generally.

**CLAIM 1: BATTERY**

40.     Plaintiff incorporates all allegations of this complaint.

41.     Defendant intentionally used his own sperm to impregnate Plaintiff in 1979.

42.     Defendant acted without permission. Plaintiff did not consent to this contact.

43.     The contact was unlawful, harmful, and offensive.

44.     Plaintiff suffered severe and debilitating damages as a result.

45.     Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant and deter such misconduct in the future.

**CLAIM 2: BATTERY**

46.     Plaintiff incorporates all allegations of this complaint.

47.     Defendant intentionally used his own sperm to impregnate Plaintiff in 1981.

48.     Defendant acted without permission. Plaintiff did not consent to this contact.

49.     The contact was unlawful, harmful, and offensive.

50.     Plaintiff suffered severe and debilitating damages as a result.

51.     Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant and deter such misconduct in the future.

**CLAIM 3: INTENTIONAL FRAUD**

52.     Plaintiff incorporates all allegations of this complaint.

53.     Defendant made the following false representations to Plaintiff at the time of her fertility treatment in 1979: (1) the donor sperm would come from a sperm bank; (2) the sperm would be

from an anonymous donor who would never know Plaintiff's identity; (3) the donor would be a medical student or medical intern (approximately age 22–28); (4) the donor would physically resemble her husband; (5) the donor would share a similar ethnic background as her husband; (6) the donor would be in excellent health; (7) the sperm specimen would be medically screened and cleared; (8) the donor would have above-average intelligence; (9) the donor would have musical ability as her husband did; and (10) the donor would share their Christian faith. Plaintiff consented to be artificially inseminated with anonymous donor sperm that met those conditions.

54. Defendant knew at the time that each of the representations in the paragraph above were both false and material. Plaintiff would not have agreed to have Defendant use his own sperm to inseminate her. Nor would she have agreed to use a sperm sample from a Tay Sachs carrier given the serious health risks.

55. Defendant intended Plaintiff to rely on Defendant's false representations.

56. Plaintiff was unaware and had no reason to suspect that Defendant's representations were false. She justifiably relied on Defendant's lies and was damaged as a result.

57. As a direct and proximate result of Defendant's misconduct, Plaintiff has suffered and continues to suffer severe and debilitating damages.

58. Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant and deter such misconduct in the future.

**CLAIM 4: INTENTIONAL FRAUD**

59. Plaintiff incorporates all allegations of this complaint.

60. At the time of Plaintiff's fertility treatment in 1981, Defendant falsely represented to Plaintiff that he would use the same anonymous donor sperm to inseminate her that he had used two years earlier when Plaintiff became pregnant with her daughter. This representation carried with it each of the above-referenced false representations Defendant had made about the donor sperm in 1979.

8
**COMPLAINT WITH JURY DEMAND**
**CASE NO.**

61.     Defendant knew at the time that each of these representations was both false and material.
Plaintiff would not have agreed to have Defendant use his own sperm to inseminate her.

62.     Defendant intended Plaintiff to rely on Defendant's false representations.

63.     Plaintiff was unaware and had no reason to suspect that Defendant's representations were
false. She justifiably relied on Defendant's lies and was damaged as a result.

64.     As a direct and proximate result of Defendant's misconduct, Plaintiff has suffered and
continues to suffer severe and debilitating damages.

65.     Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless
disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant
and deter such misconduct in the future.

**CLAIM 5: CONSTRUCTIVE FRAUD**

66.     Plaintiff incorporates all allegations of this complaint.

67.     A doctor-patient relationship existed between Plaintiff and Defendant in 1979, in which
Plaintiff reposed trust and confidence in Defendant's integrity and fidelity to her as his patient.

68.     Defendant deceived Plaintiff by holding himself out as someone she and her husband
could trust and, at the same time, not telling them that Defendant was going to use his own sperm
to impregnate her against her will. Defendant failed to obtain Plaintiff's informed consent.

69.     Defendant's acts, omissions, and concealments described above breached his legal or
equitable duty, trust, or confidence to Plaintiff, in violation of the obligations imposed on him as
her physician by virtue of the position of trust and confidence he held.

70.     As a direct and proximate result of Defendant's misconduct, Plaintiff has suffered and
continues to suffer severe and debilitating damages.

71.     Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless
disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant
and deter such misconduct in the future.

**CLAIM 6: CONSTRUCTIVE FRAUD**

72.     Plaintiff incorporates all allegations of this complaint.

73.     A doctor-patient relationship existed between Plaintiff and Defendant in 1981, in which Plaintiff reposed trust and confidence in Defendant's integrity and fidelity to her as his patient.

74.     Defendant deceived Plaintiff by holding himself out as someone she and her husband could trust and, at the same time, not telling them that Defendant was going to use his own sperm to impregnate her against her will.

75.     Defendant's acts, omissions, and concealments described above breached his legal or equitable duty, trust, or confidence to Plaintiff, in violation of the obligations imposed on him as her physician by virtue of the position of trust and confidence he held.

76.     As a direct and proximate result of Defendant's misconduct, Plaintiff has suffered and continues to suffer severe and debilitating damages.

77.     Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant and deter such misconduct in the future.

**CLAIM 7: FRAUD BY CONCEALMENT**

78.     Plaintiff incorporates all allegations of this complaint.

79.     In 1979, Defendant concealed material facts that he was under a duty to disclose to Plaintiff, including the following: (1) he was going to use his own sperm to impregnate her rather than the promised donor sperm, (2) he was using sperm that had not been subjected to the appropriate screening process that a sperm bank would have conducted, including screening for dangerous genetic conditions such as Tay Sachs.

80.     Defendant concealed these material facts from Plaintiff with the intent to defraud her because he knew she would not agree to allow him to use his sperm to impregnate her.

81.     Plaintiff was unaware that Defendant was going to or had used his own sperm to impregnate her at that time and would not have agreed to that had she known the truth Defendant concealed from her.

82.     As a direct and proximate result of Defendant's misconduct, Plaintiff has suffered and continues to suffer severe and debilitating damages.

83.     Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant and deter such misconduct in the future.

## CLAIM 8: FRAUD BY CONCEALMENT

84.     Plaintiff incorporates all allegations of this complaint.

85.     Plaintiff would not have returned to Defendant for additional fertility services had he disclosed the truth about using his own sperm to impregnate her in 1979.

86.     In 1981, Defendant continued to conceal the same material facts that he was under a duty to disclose to Plaintiff as detailed above.

87.     Defendant concealed this material fact from Plaintiff with the intent to defraud her because he knew she would not agree to allow him to use his sperm to impregnate her.

88.     Plaintiff was unaware that Defendant was going to or had used his own sperm to impregnate her at that time and would not have agreed to that had she known the truth Defendant concealed from her.

89.     As a direct and proximate result of Defendant's misconduct, Plaintiff has suffered and continues to suffer severe and debilitating damages.

90.     Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant and deter such misconduct in the future.

## CLAIM 9: BREACH OF FIDUCIARY DUTY

91.     Plaintiff incorporates all allegations of this complaint.

92.     Defendant owed Plaintiff a fiduciary duty based on their doctor-patient relationship in 1979.

93.     Defendant breached his fiduciary duty to Plaintiff by inserting his own sperm into her body without her knowledge or consent, rather than using the promised sperm of an anonymous donor from a sperm bank, and by continuing to conceal that he was the biological father of Plaintiff's children.

1   94.   This breach impaired the value of Defendant's services.

2   95.   Defendant's breach was intentional and directly and proximately caused Plaintiff

3   damages.

4   96.   Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless

5   disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant

6   and deter such misconduct in the future.

7   **CLAIM 10: BREACH OF FIDUCIARY DUTY**

8   97.   Plaintiff incorporates all allegations of this complaint.

9   98.   Defendant owed Plaintiff a fiduciary duty based on their doctor-patient relationship in

10  1981.

11  99.   Defendant breached his fiduciary duty to Plaintiff by inserting his own sperm into her

12  body without her knowledge or consent, rather than using the promised sperm of an anonymous

13  donor from a sperm bank, and by continuing to conceal that he was the biological father of

14  Plaintiff's children.

15  100.  This breach impaired the value of Defendant's services.

16  101.  Defendant's breach was intentional and directly and proximately caused Plaintiff

17  damages.

18  102.  Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless

19  disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant

20  and deter such misconduct in the future.

21  **CLAIM 11: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

22  103.  Plaintiff incorporates all allegations of this complaint.

23  104.  In 1979, Defendant intentionally or recklessly impregnated Plaintiff using his own sperm

24  without her consent.

25  105.  A doctor impregnating a patient with his own sperm without her consent is extreme and

26  outrageous. No reasonable person should be expected to tolerate or endure such an intimate

27  betrayal of trust.

28

106.     A doctor impregnating a patient with sperm of a donor with a deadly genetic condition like Tay Sachs is extreme and outrageous. No reasonable person should be expected to tolerate or endure such an intimate betrayal of trust.

107.     As a direct and proximate result of Defendant's misconduct, Plaintiff has suffered and continues to suffer severe and debilitating damages.

108.     Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant and deter such misconduct in the future.

**CLAIM 12: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

109.     Plaintiff incorporates all allegations of this complaint.

110.     In 1981, Defendant intentionally or recklessly impregnated Plaintiff using his own sperm without her consent.

111.     A doctor impregnating a patient with his own sperm without her consent is extreme and outrageous. No reasonable person should be expected to tolerate or endure such an intimate betrayal of trust.

112.     A doctor impregnating a patient with sperm of a donor with a deadly genetic condition like Tay Sachs is extreme and outrageous. No reasonable person should be expected to tolerate or endure such an intimate betrayal of trust.

113.     As a direct and proximate result of Defendant's misconduct, Plaintiff has suffered and continues to suffer severe and debilitating emotional distress.

114.     Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant and deter such misconduct in the future.

**CLAIM 13: UNJUST ENRICHMENT**

115.     Plaintiff incorporates all allegations of this complaint.

116.     In 1979, Plaintiff paid Defendant for the anonymous donor sperm that he promised to use to impregnate her.

1   117.    Defendant did not provide the promised anonymous donor sperm and instead used his

2   own sperm to inseminate Plaintiff. But he did not refund her payment. Defendant was not entitled

3   to retain payment for sperm he did not obtain.

4   118.    Plaintiff seeks restitution for the cost of the sperm she paid for but did not receive.

5                          **CLAIM 14: UNJUST ENRICHMENT**

6   119.    Plaintiff incorporates all allegations of this complaint.

7   120.    In 1981, Plaintiff paid Defendant for the anonymous donor sperm that he promised to use

8   to impregnate her.

9   121.    Defendant did not provide the promised anonymous donor sperm and instead used his

10  own sperm to inseminate Plaintiff. But he did not refund her payment. Defendant was not entitled

11  to retain payment for sperm he did not obtain.

12  122.    Plaintiff seeks restitution for the cost of the sperm she paid for but did not receive.

13               **CLAIM 15: NEGLIGENCE AND/OR PROFESSIONAL MALPRACTICE**

14  123.    Plaintiff incorporates all allegations of this complaint.

15  124.    Defendant had the following duties to Plaintiff in 1979: a duty to follow her instructions

16  regarding the artificial insemination she requested; a duty to perform the act(s) he promised her

17  explicitly; a duty not to inject Defendant's own bodily fluid into her body without her consent; a

18  duty to obtain her informed consent for any procedure he performed; and a duty to disclose what

19  he had done rather than fraudulently conceal it for decades.

20  125.    Numerous statutory and common-law authorities create the duty for a doctor not to insert

21  his own sperm into his patient without her consent (and contrary to her express instructions).

22  126.    Defendant intentionally concealed his misconduct from Plaintiff for decades, including

23  after she recently wrote him and called him to request information about the anonymous donor's

24  medical history.

25  127.    As a direct and proximate result of Defendant's gross and intentional breach of his duties,

26  Plaintiff has suffered and continues to suffer severe and debilitating damages.

27

28

1   128.    Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless

2   disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant

3   and deter such misconduct in the future.

4                **CLAIM 16: NEGLIGENCE AND/OR PROFESSIONAL MALPRACTICE**

5   129.    Plaintiff incorporates all allegations of this complaint.

6   130.    Defendant had the following duties to Plaintiff in 1981: a duty to follow her instructions

7   regarding the artificial insemination she requested; a duty not to inject Defendant's own bodily

8   fluid into her body without her consent; a duty to obtain her informed consent for any procedure

9   he performed; and a duty to disclose what he had done rather than fraudulently conceal it for

10  decades.

11  131.    Numerous statutory and common-law authorities create the duty for a doctor not to insert

12  his own sperm into his patient without her consent (and contrary to her express instructions).

13  132.    Defendant intentionally concealed his misconduct from Plaintiff for decades, including

14  after she recently wrote him and called him to request information about the anonymous donor's

15  medical history.

16  133.    As a direct and proximate result of Defendant's gross and intentional breach of his duties,

17  Plaintiff has suffered and continues to suffer severe and debilitating damages.

18  134.    Defendant's conduct was malicious, oppressive, despicable, willful, and/or in reckless

19  disregard of Plaintiff's rights and she is entitled to recover punitive damages to punish Defendant

20  and deter such misconduct in the future.

21

22                        **CLAIM 17: BREACH OF CONTRACT**

23  135.    Plaintiff incorporates all allegations of this complaint.

24  136.    In 1979, Plaintiff and Defendant entered a contract in which Defendant agreed to provide

25  certain fertility services desired by Plaintiff, specifically to provide artificial insemination

26  services to Plaintiff using an anonymous sperm donor with specific characteristics. Defendant

27  failed to provide those services as required by their contractual agreement, using his own sperm

28

---

1  rather than sperm from an anonymous donor and without disclosing that he was a carrier for a

2  deadly genetic condition.

3  137.   The parties' contract centered on inserting sperm into a woman's body, an act that is

4  inherently personal and intimate. Defendant's breach was of such a kind that serious mental

5  anguish was a particularly likely result, and thus Plaintiff may recover her emotional damages for

6  the traumatic results of Defendant's breach.

7  138.   As a direct and proximate result of Defendant's intentional breach of contract, Plaintiff

8  has suffered and continues to suffer severe and debilitating damages.

9  **CLAIM 18: BREACH OF CONTRACT**

10  139.   Plaintiff incorporates all allegations of this complaint.

11  140.   In 1981, Plaintiff and Defendant entered a contract in which Defendant agreed to provide

12  certain fertility services desired by Plaintiff, specifically to provide artificial insemination

13  services to Plaintiff using an anonymous sperm donor with specific characteristics. Defendant

14  failed to provide those services as required by their contractual agreement, using his own sperm

15  rather than sperm from an anonymous donor.

16  141.   The parties' contract centered on inserting sperm into a woman's body, an act that is

17  inherently personal and intimate. Defendant's breach was of such a kind that serious mental

18  anguish was a particularly likely result, and thus Plaintiff may recover her emotional damages for

19  the traumatic results of Defendant's breach.

20  142.   As a direct and proximate result of Defendant's intentional breach of contract, Plaintiff

21  has suffered and continues to suffer severe and debilitating damages.

22  **CLAIM 19: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH**

23  **AND FAIR DEALING**

24  143.   Plaintiff incorporates all allegations of this complaint.

25  144.   Plaintiff performed her obligations under the parties 1979 contract by paying for

26  Defendant's services.

27  145.   Plaintiff did not receive the full benefit of her agreement with Defendant in 1979.

28

**COMPLAINT WITH JURY DEMAND**
**CASE NO.**

146.    Defendant's action of using his own sperm to impregnate Plaintiff without her permission unfairly frustrated and interfered with Plaintiff's rights to receive the benefits of the contract.

147.    Defendant's action of using sperm from a carrier of a deadly genetic condition to impregnate Plaintiff without her permission unfairly frustrated and interfered with Plaintiff's rights to receive the benefits of the contract.

148.    As a direct and proximate result of Defendant's intentional this implied covenant, Plaintiff has suffered and continues to suffer severe and debilitating damages.

## CLAIM 20: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

## AND FAIR DEALING

149.    Plaintiff incorporates all allegations of this complaint.

150.    Plaintiff performed her obligations under the parties' 1981 contract by paying for Defendant's services.

151.    Plaintiff did not receive the full benefit of her agreement with Defendant in 1981.

152.    Defendant's action of using his own sperm to impregnate Plaintiff without her permission unfairly frustrated and interfered with Plaintiff's rights to receive the benefits of the contract.

153.    Defendant's action of using sperm from a carrier of a deadly genetic condition to impregnate Plaintiff without her permission unfairly frustrated and interfered with Plaintiff's rights to receive the benefits of the contract.

154.    As a direct and proximate result of Defendant's intentional this implied covenant, Plaintiff has suffered and continues to suffer severe and debilitating damages.

## CLAIM 21: VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

## (BUS. & PROF. CODE § 17200 ET SEQ.)

155.    Plaintiff incorporates all allegations of this complaint.

156.    Defendant's conduct in 1979 described above constituted an unlawful, unfair, and fraudulent business act or practice.

157.    Defendant's conduct described above was forbidden by law; offended public policy; was immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff; deceived Plaintiff; and would have deceived a reasonable member of the public.

1   158.   Plaintiff relied on Defendant's deception described above and was injured as a result.

2   159.   Had Plaintiff known what Defendant was going to do to her, she would have gone to

3   another doctor.

4   160.   Plaintiff was injured as a result of Defendant's unlawful, unfair, and fraudulent conduct.

5   **CLAIM 22: VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

6   **(BUS. & PROF. CODE § 17200 ET SEQ.)**

7   161.   Plaintiff incorporates all allegations of this complaint.

8   162.   Defendant's conduct in 1981 described above constituted an unlawful, unfair, and

9   fraudulent business act or practice.

10   163.   Defendant's conduct described above was forbidden by law; offended public policy; was

11   immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff; deceived

12   Plaintiff; and would have deceived a reasonable member of the public.

13   164.   Plaintiff relied on Defendant's deception described above and was injured as a result.

14   165.   Had Plaintiff known what Defendant was going to do to her, she would have gone to

15   another doctor.

16   166.   Plaintiff was injured as a result of Defendant's unlawful, unfair, and fraudulent conduct.

17   **PRAYER FOR RELIEF**

18   Plaintiff respectfully requests the following relief:

19   (A)   Declare that Defendant's acts and conduct violate California law;

20   (B)   Enter judgment in Plaintiff's favor on all claims for relief;

21   (C)   Award Plaintiff full compensatory damages, economic and non-economic,

22   including, but not limited to, damages for pain, suffering, mental anguish,

23   emotional distress, humiliation, and inconvenience that she has suffered and is

24   reasonably certain to suffer in the future;

25   (D)   Award Plaintiff punitive damages;

26   (E)   Order forfeiture and disgorgement of the professional fees Plaintiff paid to

27   Defendant;

28   (F)   Order restitution, including for Defendant's failure to refund the costs Plaintiff

18

**COMPLAINT WITH JURY DEMAND**
**CASE NO.**

1    paid to procure donor sperm that was supposed to be used in her artificial-

2    insemination procedures;

3    (G)    Order Defendant to provide a copy of his personal health history;

4    (H)    Award pre- and post-judgment interest at the highest lawful rate;

5    (I)    Award all other relief in law or equity to which Plaintiff is entitled and the that

6    Court deems equitable, just, or proper.

7    **JURY DEMAND**

8    Plaintiff demands a trial by jury on all issues within this complaint.

9

10    Dated:  September 16, 2020                    Respectfully submitted,

11

12                                    /s/Adam B. Wolf

13                                    Adam B. Wolf (Cal Bar No. 215914)
                                      PEIFFER WOLF CARR KANE & CONWAY,
                                      A Professional Law Corporation
14                                    4 Embarcadero Center, Suite 1400
                                      San Francisco, CA 94111
15                                    Telephone: 415.766.3545
                                      Facsimile: 415.402.0058
16                                    Email:    awolf@peifferwolf.com

17                                    Ashlie Case Sletvold (*pro hac vice to be filed*)
                                      PEIFFER WOLF CARR KANE & CONWAY,
18                                    A Professional Law Corporation
                                      1422 Euclid Avenue, Suite 1610
19                                    Cleveland, OH 44115
                                      Telephone: 216.260.0808
20                                    Facsimile: 504.608.1465
                                      Email:    asletvold@peifferwolf.com

21

22

23

24

25

26

27

28

19
**COMPLAINT WITH JURY DEMAND**
**CASE NO.**